FILED
2012 Jun-07  AM 08:15
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **MICHAEL KELLY, an individual and BILLI JO KELLY, an individual** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **Civil Action No.:** _____ |
| **WELLS FARGO BANK, NATIONAL ASSOCIATION, a/k/a WELLS FARGO BANK, N.A.;  US BANK, N.A., as Trustee for Structured Asset Securities Corporation Mortgage Loan Trust 2007-WF1,** | ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COME NOW** the Plaintiffs Michael Kelly and Billi Jo Kelly (hereinafter "Plaintiffs"), by and through their attorneys of record, and file their Complaint as follows:

1.  This is a lawsuit brought under Alabama state law related to wrongful conduct by the Defendants which led to an improper foreclosure and loss of Plaintiffs' property.

1

2.     This suit is also brought under federal law, including the Fair Debt Collection

Practices Act ("FDCPA") and the Truth in Lending Act ("TILA").

## PARTIES

3.     The Plaintiffs Michael Kelly and Billi Jo Kelly are Alabama residents who

live in Marshall County, Alabama, which is in this judicial district.

4.     The Defendant Wells Fargo Bank, National Association a/k/a Wells Fargo

Bank, N.A.  ("Wells Fargo") is a foreign mortgage company which allegedly

owned, serviced, or was otherwise involved in the mortgage loan of

Plaintiffs.   The principal place of business of Wells Fargo is in North

Carolina and Wells Fargo is incorporated outside of Alabama.

5.     The Defendant US Bank, N.A., as Trustee for Structured Asset Securities

Corporation Mortgage Loan Trust 2007-WF1 ("US Bank") is a foreign

company which allegedly owned, serviced, or was otherwise involved in the

mortgage loan of Plaintiffs.  The principal place of business of US Bank is in

Minnesota and US Bank is incorporated outside of Alabama (believed to be

Minnesota).

## JURISDICTION

6.     Personal jurisdiction exists over Defendants as they have the necessary

minimum contacts with the State of Alabama and this suit arises out of its

specific conduct with Plaintiffs in Alabama.

7.      Subject matter jurisdiction exists under 28 U.S.C. Sections 1331 and 1332.

8.      The Plaintiffs are citizens of Alabama.

9.      Defendants are not citizens of Alabama.

10.     The amount in controversy is over $75,000.

## VENUE

11.     Venue is proper in this judicial district under 28 U.S.C. Section 1391(a)(2) as "a substantial part of the events or omissions giving rise to the claim" asserted occurred in this judicial district.

## STATEMENT OF FACTS

12.     Defendants acted as agents for each other in all the actions taken that relate in any way to Plaintiffs.

13.     Plaintiffs fell behind on their mortgage loan to Wells Fargo, which allegedly had the right to collect the mortgage payments of Plaintiffs.

14.     Plaintiffs were in discussions with Wells Fargo to modify the loan.

15.     Defendants specifically told Plaintiffs before the foreclosure (which occurred on April 5, 2012) that there was no foreclosure scheduled.

16.     This was untrue and Plaintiffs relied upon this as it was reasonable and justifiable to rely upon what Defendants said as they were the only ones who knew the truth.

17.    Had Plaintiffs been told the truth about the foreclosure being scheduled, Plaintiffs could have taken other steps to prevent the foreclosure.

18.    For example, Plaintiffs could have filed for bankruptcy which would have stopped the foreclosure.

19.    Another example is Plaintiffs could have obtained money from relatives to reinstate the loan and stop the foreclosure or to simply pay off the $33,000.00 owed on the loan.

20.    In reliance upon what Defendants had told Plaintiffs, however, Plaintiffs did not take any steps to stop the foreclosure as Plaintiffs had been assured there was not even a foreclosure scheduled.

21.    Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.  15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

(a)    There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

(b)    Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c)    **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts**.

(d)    Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt

collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e)   It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged**, and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

22.   Plaintiffs took out a consumer debt – a home loan and such loan was secured by a mortgage on the property owned by Plaintiffs.

23.   The Defendants are considered "Debt Collectors" under the Fair Debt Collection Practices Act (FDCPA) as Defendants bought the loan or were assigned the loan after it was allegedly in default.

24.   The foreclosure was illegal and constituted a threat to take action which Defendants was not legally entitled to take.

25.   Defendants improperly applied, charged, or otherwise handled expenses, charges, fees, payments, and the loss mitigation process (including loan modification) with Plaintiffs.

26.   Defendants never gave notice of the foreclosure or acceleration to Plaintiffs.

27.   Defendants refused to send Plaintiffs an "acceleration" letter as required by the Mortgage.

28.   As Defendants did not send an acceleration letter, the foreclosure was void and illegal.

29.   Defendants refused to tell Plaintiffs that there was a foreclosure sale set.

30.   Defendants sold the Plaintiffs house for $69,000.00.

31.   Plaintiffs house was valued at $160,000.00

32.   Plaintiffs only owed $33,000.00 on the house.

33.   A third party, Gregg Oliver, bought the property.

34.   Plaintiffs first became aware that there was a foreclosure when Mr. Oliver and another man knocked on the door of Plaintiffs' house and informed Plaintiff Billi Jo Kelly that the house had been sold.

35.   Plaintiff Billi Jo Kelly told the men that her house was not for sale.

36.   The men told Plaintiff Billi Jo Kelly that they had just bought the house at the foreclosure sale.

37.   Plaintiff Billi Jo Kelly argued with the men and told them that it was impossible as she had the modification paperwork from the Defendant Wells Fargo.

38.   Plaintiff Billi Jo Kelly broke down in tears in front of the men as she realized that the foreclosure had occurred, despite the promises of the Defendants and that she had lost her home.

39.   Plaintiffs were told they had to leave their home and they did so within the ten (10) day period provided for by Alabama law.

40.    Plaintiffs have been prevented from redeeming the property, with the help of family, because Defendants have refused to even provide them with the $36,000.00 surplus from the illegal foreclosure sale.

41.    Not only have the Defendants taken the home of Plaintiffs illegally and through fraud and deception, but have compounded these egregious acts by stealing $36,000.00 in surplus that is owed to Plaintiffs.

42.    Defendants did not conduct all required pre-foreclosure counseling and loss mitigation efforts as required under the law and the documents controlling the conduct of Defendants, including servicing requirements and regulations.

43.    Transfers were allegedly made ultimately resulting in Defendants allegedly having the loan and/or the mortgage.

44.    Plaintiffs allege that all such transfers were improper, void, and without legal effect.

45.    For example, on January 26, 2012, there is a purported Corporate Assignment of Mortgage from Defendant Wells Fargo to Defendant US Bank.

46.    The address listed for US Bank is 4801 Frederica Street, Owensboro, Kentucky 42301.

47.    This alleged assignment included both the Mortgage and the debt.

48.    The assignment lists an actual date of assignment as January 25, 2012.

49.  It is signed on behalf of Defendant Wells Fargo by Liza (or Lisa) Bhattarai on January 26, 2012.

50.  Ms. Bhattarai is listed as the "Vice President Loan Documentation."

51.  The Notary Public who notarized this Corporate Assignment of Mortgage was Robert W. Caruso.

52.  This Corporate Assignment was prepared by Xee Yang.

53.  This was filed in the Probate Court of Marshall County, Alabama, on January 31, 2012.

54.  Defendants refused to notify Plaintiffs of the transfer of the loan, as required by federal law, including the Mortgage Transfer Act.

55.  On February 17, 2012, there was a second purported Corporate Assignment of Mortgage.

56.  Allegedly, Defendant Wells Fargo transferred the Mortgage and Note to Defendant US Bank.

57.  This alleged assignment included both the Mortgage and the debt.

58.  The address listed for US Bank is 4801 Frederica Street, Owensboro, Kentucky 42301.

59.  The "Vice President Loan Documentation" on this assignment was Matissa Koubonoy.

60.  The Notary Public was once again Robert W. Caruso.

61.   This Corporate Assignment was prepared by Michael Schmalen.

62.   This alleged assignment was recorded in the Probate Court of Marshall County, Alabama on February 21, 2012.

63.   Defendants refused to notify Plaintiffs of the transfer of the loan, as required by federal law, including the Mortgage Transfer Act.

64.   Despite the contradictory assignments listed above as examples, on January 24, 2012, the law firm of Sirote & Permutt, P.C. sent a "default letter" to Plaintiffs.

65.   This letter was sent on behalf of both Defendants.

66.   The opening sentence, which is false, states as follows:

> By virtue of default in the terms of your Note and Mortgage executed to Wells Fargo Bank, N.A., dated the 12th day of October, 2006, said mortgage having subsequently been transferred and assigned to US Bank National Association, as Trustee for Structured Asset Securities Corporation Mortgage Loan Trust 2007-WF1, and recorded in the Office of the Judge of Probate of Marshall County, Alabama, we hereby notify you that there has been a breach in the terms of the note and mortgage.

67.   The letter ends by stating that it was written "FOR: US Bank National Association, as Trustee for Structured Asset Securities Corporation Mortgage Loan Trust 2007-WF1."

68.  The Defendants could not have transferred the Mortgage and recorded it in Marshall County as of January 24, 2012, considering that the first purported assignment was signed on January 26, 2012.

69.  And certainly the January 24, 2012, default letter, which is required under the Mortgage, and must be accurate, cannot be accurate given that the assignment allegedly occurred (again) on February 17, 2012.

70.  This is simply an example, under the standard of notice pleading, of some of the Defendants' wrongdoing.

71.  The note and mortgage were improperly split from each other, which results in the mortgage being void.

72.  The foreclosure sale was without proper notice to Plaintiffs and in direct derogation of Alabama common and statutory law.

73.  Defendants lacked standing to foreclose in that they had no present legal right to enforce the security agreement in the foreclosure action.

74.  The foreclosure was illegal and void and improper due to the fraud of Defendants in promising Plaintiffs that there was no foreclosure sale set.

75.  All Defendants' employees and agents acted within the line and scope of their employment and/or agency relationship.

## **Damages Due to Defendants' Misconduct**

76.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have and will suffer massive damages and injuries.

77.   These damages include great mental anguish, damage to reputation, economic damages, and Plaintiffs claim from Defendants all damages allowable under the law.

78.   Plaintiffs have moved out of their home and are living at a relative's home with their children, in a different school system.

79.   Plaintiffs have lost approximately $100,000.00 in equity and have also not been paid the approximate $36,000.00 in surplus the $69,000.00 foreclosure brought in over the $33,000.00 allegedly owed.

## **COUNT ONE**

## **NEGLIGENCE**

80.   Plaintiffs reallege all paragraphs as if set out here in full.

81.   Defendants negligently conducted a foreclosure sale on Plaintiffs' property.

82.   Defendants negligently handled, applied, imposed, created, serviced, and processed payments, charges, fees, expenses, loss mitigation efforts (including loan modifications) and other aspects of Plaintiffs' loan and mortgage.

83.    As a direct result of the said negligence, Plaintiffs were injured and damaged as alleged above and have suffered mental anguish, economic injury and all other damages allowed by law.

84.    As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to their negligence.

## COUNT TWO

## WANTONNESS

85.    Plaintiffs reallege all paragraphs as if set out here in full.

86.    Defendants acted with reckless indifference to the consequences, and consciously and intentionally conducted a wrongful foreclosure sale on Plaintiffs' property.

87.    Defendants wantonly handled, applied, imposed, created, serviced, and processed payments, charges, fees, expenses, loss mitigation efforts (including loan modifications) and other aspects of Plaintiffs' loan and mortgage.

88.    These actions were taken with reckless indifference to the consequences, consciously and intentionally in an effort to increase profits for Defendants.

89.    Defendants knew that these actions were likely to result in injury to Plaintiffs including financial and emotional injuries and mental anguish.

90.  As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to its wantonness as well as punitive damages.

## COUNT THREE

## UNJUST ENRICHMENT

91.  Plaintiffs adopt and reallege all paragraphs as if set out here in full.

92.  The actions of Defendants in foreclosing on the home of Plaintiffs in violation of law resulted in Defendants being unjustly enriched by the payment of fees, insurance proceeds and equity in the home.

93.  Defendants have kept tens of thousands of dollars from Plaintiffs after the foreclosure.

94.  As a result of Defendants' unjust enrichment, Plaintiffs have been injured and damaged in that Plaintiffs have been forced to pay charges that were illegal, wrong in character, wrong in amount, unauthorized, or otherwise improper under threat of and the actual illegal foreclosure by Defendants.

95.  Plaintiffs claim all damages allowable under law as a result of Defendants' wrongful conduct and unjust enrichment.

## COUNT FOUR

## WRONGFUL FORECLOSURE

96.  Plaintiffs reallege all prior paragraphs as if set out here in full.

97.     Defendants wrongfully initiated a foreclosure proceeding against Plaintiffs in violation of the law, in an deliberate effort to take Plaintiffs' home illegally and to obtain it at a price that shocks the conscience.

98.     The wrongful foreclosure proceeding by Defendants was negligent, wanton or intentional, depending on proof adduced at trial.

99.     As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to their actions including an award of punitive damages.

## COUNT FIVE

## SLANDER OF TITLE

100.    Plaintiffs reallege all paragraphs as if set out here in full.

101.    Defendants, in filing or playing a role in the filing of a foreclosure deed (which is void) have caused a cloud to be placed on the title of the property of Plaintiffs.

102.    As the proximate cause of Defendants' slandering of Plaintiffs' title, Plaintiffs were caused to suffer injuries and damages and claim all damages allowable under law.

## COUNT SIX

## BREACH OF CONTRACT

103.    Plaintiffs reallege all paragraphs as if set out here in full.

104.   Defendants breached the contract with Plaintiff and thereby caused Plaintiff incidental and consequential damages (including mental anguish).

105.   This includes the improper accounting, charges, payment processing, loss mitigation efforts and the foreclosure process itself.

106.   Plaintiffs claim all damages allowable under law.

## COUNT SEVEN

## FRAUD

107.   Plaintiffs reallege all paragraphs as if set out here in full.

108.   Defendants represented to Plaintiffs that there was no foreclosure set.

109.   Plaintiffs relied upon the truthfulness of Defendants in this representation.

110.   As a result, Plaintiffs devoted all of their efforts to the modification process instead of seeking other options, including bankruptcy, drawing funds from retirement accounts or other sources to reinstate the loan, etc. to stop the foreclosure sale.

111.   This was the intent of Defendants, to trick by misrepresentation and suppression, the Plaintiffs into proceeding with the loan modification process until after the foreclosure sale occurred when the Plaintiffs would be deprived of the use of their house.

112.   At the time of this representation, Defendants had no intention of honoring this promise.

113.    Defendants never told Plaintiffs the truth about a foreclosure sale being set as required by the Mortgage and Alabama law.

114.    Defendants suppressed the truth from Plaintiffs as Defendants knew that Plaintiffs would have taken other action if the Plaintiffs had known the truth.

115.    Defendants continued to misrepresent and suppress the truth concerning material facts in that it had no intention of informing the Plaintiffs of the truth about the foreclosure sale.

116.    The misrepresentations and suppressions concerned material facts relating to the Plaintiffs keeping their home.

117.    The Plaintiffs properly relied upon the false statements and suppressions as no one else in the world would know the mind and intent of Defendants except for Defendants themselves.

118.    The shock, dismay, fear, anger, embarrassment, humiliation, sense of betrayal, and outrage felt and experienced in the Plaintiffs' body, mind, and heart, is difficult to describe.

119.    All of the actions of Defendants were taken in light of a deliberate plan, intent, and scheme to steal the Plaintiffs' home and equity.

120.    All of the misrepresentations and suppressions of material fact which occurred before and after the foreclosure were made intentionally, maliciously, recklessly, negligently, and/or innocently.

121.   The Plaintiffs properly relied upon all such misrepresentations and suppressions of material facts and have been damaged thereby.

122.   At all times Defendants had an obligation to speak truthfully and to not lie to Plaintiffs and to not tell half truths to Plaintiffs.

123.   Defendants knew at all times the devastating effect that the fraud would have upon the Plaintiffs and this is consistent with the effect that homeowners across Alabama and across this nation are experiencing from the rampant fraud committed by Defendants over the last several years.

124.   Defendants have refused to apologize to the Plaintiffs for their conduct.

125.   Defendants have refused to set aside the wrongful foreclosure which was accomplished by Defendants' fraudulent misconduct.

126.   Defendants have refused to express, in words or deeds, any remorse or any feelings of guilt or regret for what they have done to the Plaintiffs and what they are continuing to inflict upon the Plaintiffs every day.

127.   Had Plaintiffs been told the truth before the foreclosure, Plaintiffs could have taken other steps and actions to prevent the foreclosure and to save their home.

128.   Plaintiffs claim all damages allowable under law.

## COUNT EIGHT

## NEGLIGENT AND/OR WANTON HIRING, SUPERVISION, AND/OR TRAINING

129.  Plaintiffs reallege all paragraphs as if set out here in full.

130.  Defendants hired, supervised, and/or trained incompetent agents or employees who committed some or all of the wrongful acts set forth in this Complaint.

131.  Defendants knew or should have known of the incompetence of these agents or employees.

132.  Defendants were negligent or reckless in their hiring, supervision, and/or training which led as a direct and proximate result to the damages suffered by Plaintiffs.

133.  Plaintiffs claim all damages allowable under law.

## COUNT NINE

## INTENTIONAL AND/OR MALICIOUS CONDUCT

134.  Plaintiffs reallege all paragraphs as if set out here in full.

135.  All actions of Defendants were made intentionally and/or malicious and led to the damages of Plaintiffs as a direct proximate result.

136.  Plaintiffs claim all damages allowable under law.

## COUNT TEN

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

137.   Plaintiff realleges all paragraphs as if set out here in full.

138.   Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendants violated Alabama state law as described in this Complaint.

139.   Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

140.   Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

141.    Defendants and/or their agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

142.    Defendants and their agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

143.    Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

144.    The conduct of Defendants and their agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

145.    As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendants.

146.    All acts of Defendants and their agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such Defendants are subject to punitive damages.

## COUNT ELEVEN

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

147.  Plaintiffs reallege all paragraphs as if set out here in full.

148.  The acts and omissions of Defendants and their agents constitute numerous and multiple violations of the FDCPA with respect to Plaintiffs.

149.  As a result of the violations of the FDCPA, Plaintiffs are entitled to statutory damages, actual and compensatory damages, and reasonable attorney's fees and costs from the Defendants.

## COUNT TWELVE

## VIOLATION OF THE TRUTH IN LENDING ACT ("TILA") AND RESPA

150.  Plaintiffs reallege all paragraphs as if set out here in full.

151.  TILA requires that borrowers such as Plaintiffs must be notified whenever ownership of a mortgage loan is transferred.  15 U.S.C. § 1641(g).

152.  15 U.S.C. § 1641(g) details the extensive information which must be provided to consumer homeowners such as the Plaintiffs.

153.  Defendants claim to have bought, received via assignment or otherwise to have received by a transfer of some type the mortgage loan of the Plaintiffs.

154.  Defendants intentionally or otherwise illegally refused to comply with 15 U.S.C. § 1641(g).

155.  The required notice was not sent to Plaintiffs by Defendants.

156.   RESPA requires that all companies involved in servicing transfers must timely and properly notify Plaintiffs of the changes and the Defendants failed to do so here.

157.   The conduct of the Defendants proximately caused damages and injuries to Plaintiffs as set forth in this Complaint.

158.   Defendants are subject to actual damages, statutory damages, attorney's fees, litigation expenses, costs, and all other relief to which Plaintiffs are entitled to which Plaintiffs hereby claim.

## <u>RELIEF REQUESTED</u>

**WHEREFORE,** Plaintiffs having set forth their claims for relief against Defendants, respectfully pray of the Court as follows:

a.   That Plaintiffs recover against Defendants a sum to be determined by a jury of their peers in the form of actual, statutory, nominal, and punitive damages;

b.   That Plaintiffs recover reasonable attorney's fees, costs, expenses;

c.   That the foreclosure sale be set aside; and

d.   That Plaintiffs have such other and further and proper relief as the Court may deem just and proper.

Respectfully Submitted,

/s/ John G. Watts
**John G. Watts (ASB-5819- T82J)**
**M. Stan Herring (ASB-1074-N72M)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com

**Attorneys for Plaintiffs**

## PLAINTIFFS DEMAND A TRIAL BY JURY

**Serve defendants via certified mail at the following addresses**:

Wells Fargo Bank, National Association
c/o CSC Lawyers Incorporating Srv, Inc.
150 S. Perry Street
Montgomery, Alabama 36104

US Bank, N.A. as Trustee for
Structured Asset Securities Corporation
Mortgage Loan Trust 2007-WF1
4801 Frederica Street
Owensboro, KY 42301